## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

ANNE WHITNEY COLLINS
1981 Rochambeau Drive
Malvern, PA  19355

         Plaintiff,

   vs.

EASTERN UNIVERSITY
1300 Eagle Road
St. Davids, PA  19087

        Defendant.

Civil Action No.

## COMPLAINT

## Jury Trial Demanded

Plaintiff, Anne Whitney Collins ("Collins" or "Plaintiff") claims of the Defendant Eastern University ("Defendant" or "Eastern") an amount in excess of One Hundred Fifty Thousand Dollars ($150,000.00) in damages upon a cause of action whereof the following is a statement:

## INTRODUCTION

1.     This action for declaratory, injunctive, monetary and other appropriate relief is brought by Plaintiff, to redress intentional violations by Defendant of rights secured to her by the applicable provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000 *et seq.* ("Title VII") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 *et seq.* ("PHRA").

2.     More specifically, Defendant, through its agents and employees including but not limited Dr. Kenton Sparks, subjected Plaintiff to a continuous pattern of retaliation during her

employment after she complained about race discrimination and other sexist behavior in the

workplace which ultimately resulted in the non-renewal of her Faculty Covenant for the 2022-

2023 Academic Year.

3.      As a direct result of Defendant's unlawful actions, Plaintiff has suffered

substantial economic damages and extreme and severe emotional distress.

## JURISDICTION

4.      Jurisdiction is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §626(c) and 42

U.S.C. §2000(e) *et seq*., all of which provide for original jurisdiction of Plaintiff's claims arising

under the laws of the United States and over actions to recover damages and to secure equitable

and other relief under the appropriate governing statutes.

5.      This Court has supplemental jurisdiction over the Plaintiff's state law claims

arising under statutes of the Commonwealth of Pennsylvania pursuant to 28 U.S.C. §1367.

6.      Pursuant to Rule 5.1.1 of the Local Rules of Civil Procedure of the United States

District Court for the Eastern District of Pennsylvania, Plaintiff avers only that the amount in

controversy exceeds the jurisdictional amount of One Hundred Fifty Thousand Dollars

($150,000) exclusive of interest and costs.

7.      All necessary and appropriate administrative prerequisites to the filing of this

action have occurred.

8.      On June 6, 2022, Plaintiff filed a timely administrative complaint with the Equal

Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations

Commission ("PHRC"), which was docketed at 530-2022-04678, alleging retaliation.

9.      Thereafter, the EEOC issued a Notice Of Right To Sue to Plaintiff on April 20,

2023 and this Complaint has been filed within ninety (90) days of receipt of the Right to Sue.

10.     One year has passed since the filing of Plaintiff's Charge of Discrimination and Plaintiff has fully exhausted her administrative remedies under the PHRA.

## VENUE

11.     All actions complained of herein occurred within the jurisdiction of this Court and involve a Defendant that regularly does business within the Eastern District of Pennsylvania.

12.     Defendant operates an accredited  University located in St. Davids, Pennsylvania with additional locations in Philadelphia and Harrisburg and regularly conducts business in the Eastern District of Pennsylvania.

12.     Accordingly, venue is properly invoked pursuant to the dictates of 28 U.S.C. §§1391(b) and 1391(c).

## THE PARTIES

13.     Plaintiff Anne Whitney Collin is a resident and citizen of the Commonwealth of Pennsylvania and currently resides at 1981 Rochambeau Drive, Malvern, Pennsylvania  19355.

14.     Defendant Eastern University is an accredited private university offering a wide array of undergraduate, graduate, professional, seminary and online programs with its main campus located at 1300 Eagle Road, St. Davids, Pennsylvania  19087.

15.     Upon information and belief, during the course of Plaintiff's employment, 45% of Defendant's student body was comprised of persons of color and approximately 66% identified as female.

16.     At all times relevant to this Complaint, Plaintiff was an "employee" of Defendant as defined under the provisions of Title VII and the PHRA.

17.     At all times relevant to this Complaint, Defendant was and continues to be an "employer" as that term is defined under Title VII and the PHRA.

18.     At all times relevant to this Complaint, Al Socci ("Dean Socci") was the Dean of the College of Business and Leadership ("CBL") at Eastern.

19.     At all times relevant to this Complaint, Tod Gilmore ("Chair Gilmore") was the Chair of Undergraduate Business Programs at Eastern.

20.     At all times relevant to this Complaint, Dr. Kenton Sparks ("Provost Sparks") was the Provost and Vice President for Academic Affairs at Eastern.

21.     At all times relevant to this Complaint, Defendant was acting through its agents, officers and employees including but not limited to Dean Socci, Chair Gilmore and Provost Sparks.

## FACTUAL ALLEGATIONS

22.     Plaintiff began her employment with Defendant in 2015 as a full-time Assistant Professor (Tenure-Track) in Eastern's College of Business and Leadership.

23.     In January 2019, in addition to continuing her position as Assistant Professor, Plaintiff was promoted to the roles of Special Assistant to the Dean and Chair of the Graduate Business Programs.

24.     Plaintiff was scheduled for a promotion to the position of Associate Professor in approximately 2022 when she was projected to complete the requirements on her tenure-track.

25.     At all times during her employment Plaintiff was a highly regarded Professor with an exceptional performance history.

26.     Beginning in approximately the summer of 2019 and continuing consistently throughout 2020, Plaintiff observed racially offensive behavior by both Dean Socci and Chair Gilmore which she believed created a racially hostile work environment..

27.     Often, Dean Socci often made comments that Plaintiff found racist and, at times,

even sexist.

28.     Additionally, Chair Gilmore often espoused white supremacist beliefs and also openly disparaged the mandatory diversity training for faculty.

29.     The racist behavior by both Dean Socci and Chair Gilmore intensified after the death of George Floyd on May 25, 2020 and the subsequent protests

30.      More specifically, Dean Socci began making offensive comments regarding the Black Lives Matter movement and continued to espouse racist ideologies.

31.     Plaintiff advised Dean Socci and Chair Gilmore that their comments were offensive and that they should cease engaging in such racially discriminatory behavior especially in light of the demographics at Eastern.

32.     Notwithstanding her protests, the racist behavior continued.

33.     By the summer of 2020,  Plaintiff learned about posts on social media regarding the racist comments by Dean Socci.

34.     Additionally, an anonymous complaint was made to the Eastern hotline in the fall of 2020 by an individual that accused Dean Socci of being a racist.

35.     Dean Socci and Chair Gilmore also received negative evaluations by students which Plaintiff believed was related to their racist behavior.

36.     In addition to offending students, upon information and belief, the racist conduct by Dean Socci and Chair Gilmore offended certain staff members as well.

37.     Based on the above,  Plaintiff met with Dr. Randolph Walters, the Special Assistant to the President for Diversity, Equity and Belonging, on February 16, 2021 to report her concerns about the racially discriminatory behaviors of Dean Socci and Chair Gilmore.

38.     Following her meeting with Dr. Walters and pursuant to his advisement,

Plaintiff thereafter met with Provost Sparks to complain about the racially discriminatory actions that were occurring at Eastern and the hostile work environment that Dean Socci and Chair Gilmore were creating.

39.     Specifically, Plaintiff advised Provost Sparks that she had serious concerns regarding the hostile work environment which was being created by the white supremacy and racist ideologies promoted by Dean Socci and Tod Gilmore and had concerns regarding the equity of the classroom.

40.     Pursuant to Provost Sparks' request, Plaintiff thereafter reported the racially discriminatory behavior to Kacey Bernard ("Bernard"), the Chief Human Resources Officer, on February 22, 2021.

41.     Provost Sparks and Ms. Bernard led Plaintiff to believe that an investigation would be conducted regarding her complaints and that remedial actions would be taken.

42.     However, upon information and belief, a full and thorough investigation never occurred and no remedial action was taken.

43.     Instead, beginning in July of 2021 and continuing regularly thereafter, Plaintiff has been subjected to pervasive retaliation as a result of her complaints of discrimination.

44.     For starters, in July 2021, Chief Officer Bernard attempted to persuade Plaintiff to resign from her position.

45.     Following her refusal to resign, Plaintiff was subjected to further retaliation and, on August 13, 2021, she was released from her administrative roles as Chair of the Graduate Business Program and Special Assistant to the Dean of the CBL.

46.     This diminishment of her role significantly impaired Plaintiff's ability to advise and support graduate business students as well as deprived her of management responsibilities.

47.     In addition, Plaintiff's managerial responsibilities for the academic services was removed along with the removal of her undergraduate advisees.

48.     Further, Plaintiff was assigned classes for programs that were intended to be discontinued and, in an effort to ostracize her, all but one of Plaintiff's classes were virtual.

49.     In doing so, the Defendant marginalized Plaintiff and essentially terminated her presence on the campus.

50.     Based on these retaliatory actions, on August 23, 2021, Plaintiff complained to Provost Sparks about the unlawful retaliation she was being subjected to as a result of her protests.

51.     Again, no remedial action was taken to address her complaints and the retaliation intensified.

52.     More specifically, on or about August 27, 2021, Provost Sparks reassigned all of Plaintiff's early fall courses to other professors allegedly because she would not sign a Revised Covenant which was entirely pretextual since she was previously told that there was no reason to sign the covenant.

53.     Upon learning of the reassignment, Plaintiff specifically advised Provost Sparks that she was not rejecting the courses assigned to her and that she wanted to teach, but he still refused to reinstate her teaching assignments.

54.     In fact, Provost Sparks referred to her as an "inflammatory presence on campus."

55.     Defendant also excluded Plaintiff from emails sent to all of the members of the CBL, cut off her access to Eastern's learning management system, refused to allow her to select classes to teach during the late fall session and halted proceeding with her promotion.

56.     In addition, by letter dated November 10, 2021,  Defendant advised Plaintiff that

it would not renew her Faculty Covenant for the 2022-2023 academic year.

57.     The non-renewal decision was solely based upon Plaintiff's complaints of discrimination and retaliation especially because she was previously advised that there were no concerns regarding her performance and Defendant continues to actively recruit full-time faculty for disciplines in which Plaintiff taught,.

58.     Further, Defendant forced Plaintiff to go out on an administrative leave while the parties were discussing a potential resolution, and when that did not occur, Defendant never let Plaintiff return or assign her any classes for the Spring 2022 semester.

59.     Defendant also did not offer her a new Faculty Covenant for the 2022-2023 academic year even though Defendant is understaffed.

60.     Based on the above, Plaintiff filed her administrative charge of discrimination with the EEOC and PHRA on June 6, 2022 and Defendant's counsel was notified of this filing.

61.     Immediately thereafter, Plaintiff's access to Eastern's computer system was cut off even though her the term of her covenant had not expired.

62.     The actions of Defendant in depriving Plaintiff of employment opportunities, marginalizing her role and not renewing her employment were in retaliation for her having reasonably raised and opposed racially discriminatory conduct and a hostile work environment.

63.     The aforesaid actions of retaliation are part of a pattern and practice of retaliating against employees that complain or otherwise raise issues of discrimination.

64.     The aforesaid actions of retaliation were of a continuing nature.

65.     Based on the above unlawful retaliation by Defendant, Plaintiff has suffered and will continue to suffer economic losses and has suffered significant emotional damages.

## COUNT I

### TITLE VII
### [Retaliatory Hostile Work Environment]

66.     Plaintiff incorporates all of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

67.     Plaintiff was subjected to intentional retaliation and a continuous course of retaliatory actions, thereby creating a hostile work environment.

68.     The continuous retaliation as aforesaid was sufficiently severe or pervasive, intolerable and constituted a course of conduct that invaded all aspects of her work environment, thereby detrimentally affecting Plaintiff both physically and emotionally.

69.     The aforesaid retaliation would have detrimentally affected a reasonable person in similar circumstances.

70.     Plaintiff complained about the retaliation that she was being subjected to as a result of her protests regarding discrimination in the workplace.

71.     Defendant failed to address the retaliatory conduct and failed to take corrective and remedial measure to make the workplace free from retaliatory conduct.

72.     Accordingly, Defendant is vicariously liable and legally responsible for the unlawful actions of its employees in creating a retaliatory hostile and intolerable working environment.

73.     As a direct and proximate result of the hostile work environment created by Defendant, Plaintiff has suffered economic losses including not limited to loss of earnings, earning capacity and other employment benefits.

74.     As a further direct and proximate result of Defendant's actions, Plaintiff has sustained harm, including emotional distress, pain and suffering, humiliation and embarrassment, loss of self-esteem, and mental anguish, the full extent which is not known at this time.

75.     Defendant acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights for which punitive damages are appropriate.

## COUNT II

### TITLE VII
### [Retaliation]

76.     Plaintiff incorporates all of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

77.     As a result of her reporting and making a good faith complaint of race discrimination in the workplace and reporting sexist behaviors, Defendant subjected Plaintiff to retaliation including but not limited to removing her administrative roles and managerial responsibilities, assigning her to less desirable class assignments,  eliminating her from emails, terminating her access to the computer system and not renewing her Faculty Covenant.

78.     By committing the foregoing acts, Defendant violated Title VII.

79.     The retaliatory actions by Defendant were materially adverse and harmful and would have dissuaded a reasonable similarly situated employee from reporting racially offensive and discriminatory conduct in the work place and complaining about resulting retaliation.

80.     As a direct and proximate result of the retaliation by Defendant, Plaintiff has suffered economic losses including not limited to loss of earnings, earning capacity and other employment benefits.

81.     As a further direct and proximate result of Defendant's actions, Plaintiff has sustained harm, including emotional distress, pain and suffering, humiliation and embarrassment,

loss of self-esteem, and mental anguish, the full extent which is not known at this time.

82.     Defendant acted with malice, reckless indifference, and/or deliberate indifference to Plaintiff's protected rights for which punitive damages are appropriate.

## COUNT III

### PHRA
### [Retaliatory Hostile Work Environment]

83.     Plaintiff incorporates all of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

84.     Defendant subjected Plaintiff to intentional retaliation and a continuous course of retaliatory actions which created a hostile work environment that interfered with Plaintiff's employment.

85.     By engaging in the retaliatory acts, Defendant has violated the PHRA.

86.     Said violations were intentional and willful.

87.     As a direct and proximate result of the retaliation by Defendant, Plaintiff has suffered economic losses including not limited to loss of earnings, earning capacity and other employment benefits.

88.     As a further direct and proximate result of Defendant's actions, Plaintiff has sustained harm, including emotional distress, pain and suffering, humiliation and embarrassment, loss of self-esteem, and mental anguish, the full extent which is not known at this time.

## COUNT IV

### PHRA
### [Retaliation]

89.     Plaintiff incorporates all of the allegations contained in the foregoing paragraphs of this Complaint as though fully set forth herein.

90.     Defendant subjected Plaintiff to intentional retaliation as a result of her protesting in opposition to and complaining about race discrimination and sexist behaviors in the work place.

91.     By engaging in the retaliatory acts and subjecting her to adverse actions based upon her complaints, Defendant has violated the PHRA.

92.     Said violations were intentional and willful.

93.     As a direct and proximate result of the retaliation by Defendant, Plaintiff has suffered economic losses including not limited to loss of earnings, earning capacity and other employment benefits.

94.     As a further direct and proximate result of Defendant's actions, Plaintiff has sustained harm, including emotional distress, pain and suffering, humiliation and embarrassment, loss of self-esteem, and mental anguish, the full extent which is not known at this time.

## PRAYER FOR RELIEF

**WHEREFORE**, based on the aforesaid conduct, Plaintiff respectfully requests that this Court:

a)      Enter a declaratory judgment that the actions of Defendant violated the rights of Plaintiff as secured to her by the aforementioned federal statute;

b)      Award to Plaintiff all past and future economic damages including monetary benefits owed to her and denied due to the improper and unlawful actions of Defendant;

d)      Award to Plaintiff damages and compensation for her emotional distress, humiliation, pain and suffering and loss of reputation and status in the community of her peers.

e)      Grant the Plaintiff a monetary award for punitive damages as allowed by

Title VII;

       f)      Grant to Plaintiff a monetary award for costs and expenses of this action and reasonable attorney's fees as provided by applicable federal law and

       g)      Grant to Plaintiff such additional relief as this Honorable Court deems just and proper under the circumstances.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,

**SPECTOR GADON & ROSEN, PC**

**BY:** _____
Jennifer Myers Chalal, Esquire
Alan B. Epstein
1635 Market Street, 7th Floor
Philadelphia, PA 19103
T: (215) 241-8888
F: (215) 241.8844
jchalal@sgrvlaw.com
aepstein@sgrvlaw.com

Dated: July 14, 2023